IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRYN RISK,                              )
                                          )
                    Plaintiff,            )
                                          )
         v.                               )        Civil Action No. 05-1068
                                          )
BURGETTSTOWN BOROUGH,                     )        Magistrate Judge Lisa Pupo Lenihan
PENNSYLVANIA, and GEORGE                  )
ROBERTS, Chief of Police,                 )
in his individual capacity,               )
                                          )
                    Defendants.           )

**OPINION AND MEMORANDUM ORDER**

I.       **ISSUE AND CONCLUSION**

          In this civil action by Terryn Risk ("Risk"), a former part-time police officer with

Defendant Burgettstown Borough, ("Burgettstown"), alleging civil rights violations, religious

discrimination and retaliatory discharge, Defendants Burgettstown and Chief of Police George

Roberts ("Roberts") have moved for summary judgment on all counts.  For the reasons set forth

below, Defendant's Motion will be granted as to Counts I through IV and denied as to Counts V

through VII.

## II.  <u>STATEMENT OF FACTS</u>

As more fully set forth in the pleadings in this case, and reading the facts in the light most favorable to the Plaintiff:

Risk was uneventfully employed by Burgettstown as a part-time police officer from October, 2002 through the Summer of 2004.  During that time he wore - while performing his duties as a police officer - a small cross pin on his uniform lapel, as a sign of his strong Christian beliefs; he discussed those strong  beliefs with his Chief of Police, Defendants Roberts, and others; and he requested that - to the extent possible - he not be scheduled to work a shift that extended into the early morning hours on Sunday, as he attended 10:00 a.m. church services.  Risk never declined to work, reported off from or otherwise missed work for the purpose of attending church.

In Summer, 2004, despite the absence of any policy precluding police officers from wearing jewelry or "religious items", Roberts ordered Risk to stop wearing a cross on his police uniform.  Risk protested to both the Borough Council President and Dan Johnson, the Council Police Department liason, but Roberts insisted.[1]  At approximately the same time, Roberts told Amy Prevost, a clerk at a Uni-Mart, that Risk could not work the Saturday night to early Sunday morning shift owing to church attendance, and that if cutbacks were to occur in the Burgettstown Police Department, Risk would be one of the officers dismissed because his Church interfered with his job.[2]

---

1.  <u>See</u> Plaintiff's Brief in Opposition at 1.

2.  <u>See</u> November 22, 2004 Statement of Amy Prevost.

2

Risk sought legal counsel and, on December 7, 2004, his counsel corresponded with Chief Roberts, requesting that Risk be permitted to wear his cross and asserting that termination of Risk's employment for the reasons articulated to the Uni-Mart clerk would be unlawful religious discrimination.[3]  Some time prior to January 1, 2005, Burgettstown hired a full-time police officer, Officer Pompe.

On January 9, 2005, Risk was removed from the police officers' duty schedule.[4]  Risk filed discrimination charges with the Equal Employment Opportunity Commission (the "EEOC") and the Pennsylvania Human Relations Commission (the "PHRC") on March 2, 2005. On March 7th, at its regularly-scheduled monthly meeting, the Borough Council elected to terminate Risk, together with four (4) others of its eight (8)  part-time officers. On June 23, 2005, Risk was informed by letter that his employment was officially terminated.  He filed further charges with the EEOC and PHRC on July 7, 2005.

Risk's Second Amended Complaint asserts constitutional violations under 42 U.S.C. § 1983 (Counts I-IV), Title VII (Counts V and VI), and a pendant state law claim under the PHRA (Count VII).  His principal contentions are that Defendants (1) improperly forbade him from

---

3.  This correspondence was copied to the individual members of the Borough Council.  See Defendants' Memorandum of Law in Support at 19.

4.  See Defendants' Memorandum of Law in Support at 15.  Plaintiff asserts that he was removed, and ultimately terminated, for reasons of religious discrimination, and despite being available for work at any time.  Defendants assert that Plaintiff was unavailable to work the only shifts open from January 2005 forward.

wearing a cross on his uniform, and (2) illegally terminated him for religiously-discriminatory

and/or retaliatory reasons.[5]


### III.  STANDARD ON MOTION FOR SUMMARY JUDGMENT

In deciding a Motion for Summary Judgment, the Court considers whether the non-

moving party has - through pleadings, depositions, answers to interrogatories, admissions on file,

and affidavits, if any - established any genuine issue of material fact sufficient for a reasonable

jury to find in his favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986).

---

5. More particularly, Risk asserts the following:

Count I - Violation of the Free Exercise Clause against Burgettstown, which "discharged Risk because of his religion and religious practices . . . and therefore prohibited Risk from freely exercising his religion"

Count II - Violation of Free Speech against Burgettstown which "fired Risk because of and in retaliation for his exercise of the right to speak freely" by "wearing a cross on his uniform"

Count III - Violation of the Right to Petition against Burgettstown which "fired Risk because of and in retaliation for his exercise of the right to . . . petition the government for redress of grievances" by "complaining to Roberts concerning . . . religious discrimination"

Count IV - Though inartfully worded, this Count appears intended to allege the claims of Counts I through III against Roberts in his individual capacity because he (1) "fired Risk . . . because of Risk's religious beliefs, and because Risk had worn a cross and had complained about [Roberts'] requirement that he [remove it]" and (2) did so with intentional or reckless disregard of Risk's Constitutional rights

Counts V and VI - Violation of Title VII (religious discrimination and retaliation for opposing religious discrimination, respectively) against Burgettstown for reasons aforesaid

Count VII - Violation of the PHRA against Burgettstown

The non-moving party may not rest upon factually unsupported allegations contained in its

pleadings; however, all inferences must be drawn and all doubts resolved in his favor.  See

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Colburn v. Upper Darby Townshp., 946 F.2d

1017, 1020 (3d Cir. 1990).  If the non-moving party fails to present evidence sufficient to

establish an "element essential to that party's case, and on which that party will bear the burden of

proof at trial", summary judgment is appropriate.  Celotex, 477 U.S. at 322.


## IV.  **APPLICABLE BURDEN OF PROOF**

Under Title VII, and the applicable burden-shifting framework developed in McDonnell

Douglas Corp. v. Green and Tex. Dept. of Comt. Affairs v. Burdine, and applicable here, the

plaintiff must first demonstrate that (a) he is a member of a protected class, (b) he was qualified

for the position, and (c) nonmembers of the protected class were treated more favorably or there

were other circumstances suggesting discrimination.  See Defendants' Memorandum of Law in

Support at 14 (citing 411 U.S. 792, 803-05 (1973) and 450 U.S. 248 (1981)); Plaintiff's Brief in

Opposition at 3 (citing Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 276

(3d Cir. 2001); Pivorotto v. Innovative Systems, Inc., 191 F.3d 322, 357 (3d Cir. 1999)).[6]  Once

the plaintiff has established his *prima facie* case, the employer must proffer a legitimate non-

discriminatory reason for its adverse employment decision.  The burden then returns to the

plaintiff to "proffer evidence from a which a reasonable fact-finder could either (1) disbelieve the

---

6.  See also Plaintiff's Brief in Opposition at 4 (further noting that "favorable treatment outside
the protected class is an 'alternative' element to a *prima facie* case, . . . [which] can . . . but by no
means must be present") (quoting Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933,
939 (3d Cir. 1997)).

employer's articulated reason, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Defendants' Memorandum of Law In Support at 15 (citing Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994)). The factual dispute at issue is "whether discriminatory animus motivated the employer." Fuentes, 32 F.3d at 765.

## V.  ANALYSIS

### A.  Counts I through IV - Free Exercise, Free Speech and Petition

Plaintiff Risk can premise no claim of  Constitutional violation on a restriction of his right to wear a symbol of his Christian beliefs on the lapel of his police uniform while performing his duties in the community with the significant governmental authority invested by his office.  To the contrary, this restriction on his speech is precisely the type of restraint that may be constitutionally imposed by a governmental employer on its employees.  See City of San Diego v. Roe, 543 U.S. 77, 80 (2004) (holding that police officer did not speak on matter of public concern when he used his police uniform/identification to promote a personal agenda).[7] Moreover, as Defendants have well-briefed, and as the Fifth Circuit had previously concluded, "a police officer's uniform is not a forum for . . . expressing one's personal beliefs".  Daniels v. City of Arlington, 246 F.3d 500, 502-03 (5th Cir. 2001) (concluding that wearing of cross by officer was not speech on  a matter of public concern within the protections of First Amendment

-------------------------------------------------------------------------------

7. See also Azzaro v. County of Allegheny, 110 F.3d 968, 976 (3d Cir. 1997) (explaining that a public employee's expressive conduct is constitutionally protected only when both (a) it addresses a matter of public concern, and (b) its value outweighs the government's interest in effective and efficient fulfillment of its responsibilities).

jurisprudence).  And melding personal religious beliefs "with the authority symbolized by the

police uniform" risks the appearance of official, governmental endorsement of that religious

message.  Id. at 504.  Thus, the individual's right - if any - is far outweighed by the necessity of

maintaining police uniforms "as a symbol of neutral government authority, free from expressions

of personal bent or bias."  Id. (concluding that even if wearing of cross was constitutionally-

protected speech on a matter of public concern, employee's interest was outweighed by

municipality's).[8]

As Risk can establish no violation of his right to free exercise or free speech premised on

a restriction on his right to wear a cross on a police uniform, he cannot establish  a Constitutional

violation as to his right to petition.  See, e.g., Azzaro, 110 F.3d at 976 (finding discharged

employee entitled to no redress of grievances under petition clause where his expression at issue

---

8.  The distinction between Fraternal Order of Police v. City of Newark, 170 F.3d 359 (3d Cir.
1999) and the case sub judice is as plain as the nose (or hair) on one's face.  See id. (concluding
that no-beard policy for police officers, with secular exceptions, did not survive intermediate
scrutiny with respect to its application to Sunni Muslim officers whose religion required them to
wear beards).  As Defendants observe, beards do not "denote or connote religious identification"
in the manner of a cross.  Defendants' Memorandum of Law at 7.  Nor does Plaintiff allege his
wearing of a cross to be a religious imperative.

Similarly, this case is readily distinguishable from Nichol v. ARIN Intermediate Unit, 268
F.Supp.2d 536, 550 (W.D. Pa. 2003), in which this Court issued a preliminary injunction
regarding an uncertified instructional assistant's wearing of a small cross necklace while
performing her duties at an elementary school.  The law-enforcement position of, and degree of
governmental authority therefore vested in, a municipal police officer does not analogize to that
of an uncertified elementary school instructional assistant.

Finally, it is distinguishable from Tucker v. State of California Dept. of Educ., 97 F.3d 1204,
1210 (9th Cir. 1996).  A posting of religious information on an "open" informational bulletin
board on a wall in a government building is not a vestiture of governmental authority.

was not related to a matter of public concern or, if so, was outweighed).  Accordingly, Counts I

through IV of the Second Amended Complaint will be dismissed.


    **B.  Counts V through VII - Title VII and the PHRA**

    Plaintiff may, however, continue to premise causes of action on religious discrimination

and/or retaliation under Title VII and the PHRA[9] where, as here, the evidence of record raises

questions of material fact.  More particularly:

    Defendants' assertions that Risk premised his religious animus/discrimination claims

solely on his right to wear a cross notwithstanding, he has sufficiently asserted those claims, and

those of retaliation, on the basis of his (a) disfavorable treatment on and/or removal from the

schedule, and/or (b) selection for termination.[10]  And the record is sufficient to merit

consideration by a fact-finder.

    As noted above, the burden-shifting standard requires, at its end, that Plaintiff proffer

evidence from which the jury could either disbelieve Burgettstown's proffered reason(s) or

--------------------------------------------

9.   Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. §2000e.

    The PHRA is Title VII's state counterpart, and the summary judgment analysis is therefore identical.  See Defendants' Memorandum of Law in Support at 13-14.

10.  Compare Defendants' Memorandum of Law at 2 (asserting entitlement to summary judgment because "Risk had no constitutional right to express his religious beliefs in the form of a cross affixed to his police office[rs'] uniform . . . in the context of his performance as a police officer of the municipality) with Seconded Amended Complaint Counts I and IV (asserting that Risk was terminated for his religious beliefs).  See also *supra* n. 5.

believe that an invidious discriminatory motive was more likely than not.  See Fuentes, 32 F.3d at 764, *supra* at 5-6.  Plaintiff asserts that he was treated disfavorably;[11] that his part-time shifts were reduced and/or discontinued, despite his availability for work;[12] and that he was ultimately terminated, for reasons of religious discrimination and/or retaliation.[13]  Defendants respond that Plaintiff's shifts were reduced/discontinued, and that he was ultimately terminated, because he was not available to work the needed weekend hours and as part of the Borough's March 2005 workforce reduction/budget cuts.[14]  Defendants further respond that "Chief Roberts was not

---

11.  Although Defendants observe (with respect to shift preferences/scheduling) that part-time officers hold no seniority as a matter of law, a more salient consideration is - as they later acknowledge - whether, as a matter of the Borough's practice, Risk was treated differently than other similarly-situated employees.  See Defendants' Memorandum of Law at 15; 20.  See also Plaintiff's Brief in Opposition at 20-21 (citing evidence of discriminatory animus on the part of Lt. Murray, who sometimes made up the officers' work schedule, including evidence of Officer Pompe that Murray deliberately kept Risk off the schedule).

12.  Defendants assert that the hiring of an additional officer effective January 1, 2005 reduced the shifts available to Plaintiff.  They do not further discuss the reason(s) for hiring Officer Pompe at that particular time.  See Defendants' Memorandum of Law at 15-16.

13.  Defendants' termination of some of its other part-time officers does not, of course, preclude a discriminatory or retaliatory motive to Plaintiff's selection for termination, rather than retention.  Compare Defendants' Memorandum of Law at 16 (""Plaintiff was one of five officers to be terminated which certainly is not indicative of any favoritism . . . .").

14.  See Defendants' Memorandum of Law at 16 (asserting that Plaintiff has not "met his burden of proving that he was terminated for any other reasons besides the Borough's budget cuts and his availability").  See also id. at 20 (asserting that "the record in this case is undisputed that . . . beginning January 1, 2005, . . . there were only two night shifts left to fill on Saturday and Sunday, neither of which Risk *preferred* to work") (emphasis added); Plaintiff's Brief in Opposition at 11 (citing to record evidence of Roberts' testimony regarding Risk's schedule *preference* and Council members' testimony regarding their understanding that Risk was "not available" or "would not" work certain schedules).

Defendants also allege that Risk failed to submit his availability in time to be placed on the shift schedule.  The Court notes that despite an apparent policy requiring that Borough police

(continued...)

involved in this decision to terminate or retain any officer." Defendants' Memorandum of Law at 16.   Plaintiff contends, however, that, (a) although he preferred not to work a shift that would conflict with his Sunday morning church attendance, he told Roberts he would do so if needed; and (b) he worked many weekend shifts; and he has never missed or refused to work a scheduled shift.[15]  Moreover, he contends with specificity that other police officers - including two of the three part-time officers retained - have been unavailable to work certain shifts (owing to, *e.g.*, the constraints of a second part-time job schedule) and were accommodated/excused.[16]  And he asserts that (a) Roberts was aware of the officers to be terminated/retained prior to the announcement by the Council on March 7, 2005 despite Roberts' testimony to the contrary;[17] and (b) the evidence suggests that Roberts exercised some degree of influence, if not *de facto* decision-making, as to the hirings and terminations of the police force staff.[18]

─────────────────

14.  (...continued)
officers submit shift availability, Defendants have introduced no documentation supporting their contention that Risk was unavailable/declined to work particular shifts.  See Plaintiff's Brief in Opposition at 9.

15. See Plaintiff's Brief in Opposition at 13; cf. id. at 7, n. 7 (noting that even if Risk had declined to work a specific shift that conflicted with his church attendance, which he denies, it would be improper for Burgettstown to discharge him on that basis with no inquiry into or attempt at accommodation).

16. See Plaintiff's Brief in Opposition at 4, note 3; id. at 12.

17. See Plaintiff's Brief in Opposition at 6 & n. 6 (citing testimony of Lieutenant Murray; noting that the three retained part-time officers worked all but one or two of the part-time shifts from December 2004 through March, 2005).

18. See Amy Prevost's account of her conversation with Chief Roberts in advance of Risk's termination by vote of the Borough Council.  See also *supra* n. 14 (noting Roberts' and Council members' understandings of Risk's availability); Plaintiff's Brief in Opposition at 11 (citing Council member Walsh's testimony that Roberts informed him Risk was "not always available"

(continued...)

It appears, therefore, to this Court that material fact questions exist, and that a reasonable jury could disbelieve Defendant's assertions as to both (a) Risk's termination for non-availability when needed and (b) Roberts' non-involvement in the decision to terminate Risk , and so conclude that Burgettstown acted for other than non-discriminatory reasons.  See Abramson, *supra* (concluding that issues of material fact existed where employee alleged she was terminated owing to discriminatory animus stemming from conflict with her supervisor over her religious rights); id. (holding that employee established causal element of retaliation claim based on timing of adverse actions and evidence of antagonism); id. (finding it sufficient to claim that those exhibiting discriminatory animus influenced decision to terminate plaintiff); Foroozesh v. Lockheed Martin Operations Support, 2006 WL 2924789 (W.D. Pa. Oct. 10, 2006).  Cf. Sorba v. Pennsylvania Drilling Co., Inc., 821 F.2d 200, 202-03 (3d Cir. 1987) (noting that evidence of inconsistencies or implausibilities in the proffered reasons may reasonably support inference of discriminatory motive); Tomasso v. The Boeint Co., 445 F.3d 702, 706 (3d Cir. 2006) (noting that a reasonable fact finder may rationally disbelieve an employer's proffered reasons in the face

---

18.  (...continued)
for the needed shifts); id. (citing Council Police Department Johnson's testimony that risk "could not work" the Saturday night to Sunday morning shift and wanted to work shifts that were not available); id. (citing Council member Church's testimony that Roberts informed her Risk was not handing in his availability schedule on time); Plaintiff's Brief in Opposition at 15-18 (citations to record evidence regarding Roberts' role as Chief of Police and decision-making processes). Cf. id. at 18-19 (citations to evidence of divergent accounts of reasons for/circumstances of Roberts' self-imposed recusal from termination decisions).

Compare Defendants' Memorandum of Law at 17 (characterizing Plaintiff's case as "nothing more than bald assertions and unsubstantiated beliefs").

of weaknesses, implausibilities, or inconsistencies).[19]  Accordingly, Counts V through VII against Burgettstown must stand.


### VI.  ORDER

AND NOW, this 21 day of September, 2007, for the reasons set forth in this Opinion and Memorandum Order:


IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment be granted as to Counts I through IV and denied as to Counts V through VII.


 /s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

---

19.  To the extent Plaintiff asserts an inconsistency between Burgettstown's citation to budget cuts and non-availability, this Court disagrees.  To the contrary, in making a financially-necessary reduction to its work force, the Borough may elect to consider the individual officers' availability.  The *reason for the general reduction* in police officers may be, of course, distinct from the *reason for a particular employee's selection for termination* (*i.e.*, the legitimate criteria utilized).  Compare Plaintiff's Brief in Opposition at 10-11.