## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRYN RISK,                                     Civil Action No. 05-1068

        Plaintiff,

  vs.
                                                 Magistrate Judge Lenihan

BURGETTSTOWN BOROUGH,
PENNSYLVANIA, and GEORGE ROBERTS,
Chief of Police, in his individual capacity,

                                                 Jury Trial Demanded

        Defendants.

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
## IN LIMINE MOTION TO DISMISS OR FOR OTHER RELIEF

### I.     INTRODUCTION

On March 5, 2008, nearly six months after this Court denied Defendant's motion for summary judgment on Risk's Title VII and PHRA claims,[1] Defendant filed an "In Limine Motion to Dismiss or for Other Relief."  In doing so, Defendant does not seek exclude any evidence. Rather, it asks the Court to dismiss or stay the case, alternatively, to admit evidence which is unfairly prejudicial to Risk, does not reflect on his credibility, will waste time and cause jury confusion. The Supreme Court and Third Circuit have held such evidence to be irrelevant to the central issue in this case–whether Defendant fired Risk because of his religion.  *See* McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 360 (1995); Mardell v. Harleysville Life Ins. Co., 31 F.3d 1221, 1228-30 (3d Cir. 1995)(Mardell I), *vacated on other grounds by* 514 U.S. 1034, *reinstated in relevant part*, 65 F.3d 1072 (3d Cir.

---

[1]*See* Opinion and Memorandum Order, Civil Action No. 05-1068 (Sept. 21, 2007).

1995)(Mardell II).[2]

Defendant agrees on this last point; McKennon and its progeny will not allow evidence of Plaintiff's police certification "as a basis for its decision to terminate Plaintiff's services." (Defendant's Brief at 18).   Therefore, Defendant must offer some other purpose for which the evidence is relevant.  *See* Fed. R. Evid. 402 ("[e]vidence which is not relevant is not admissible"). However, as more fully explained below, Defendant's decertification is not relevant for *any* purpose, and it is therefore inadmissible on the question of Defendant's liability.

In addition, Defendant mischaracterizes the evidence it seeks to introduce.  While Defendant alleges Risk's decertification bears on his credibility because he committed some sort of fraud on the Commonwealth, the Municipal Police Officer's Education and Training Commission (MPOETC) only found his certification was issued "in error." Therefore, this evidence is not probative of Risk's credibility.

Further, this is not the same type of after-acquired evidence at issue in other cases, where the plaintiff engaged misconduct *before* termination that was discovered after termination.  Here, well into this litigation, defense counsel contacted the Municipal Police Officers Education and Training Commission (MPOETC) on May 18, 2006, with what it claims was a "general inquiry about certification procedures when an officer transfers employment with another state..."  (Defendant's Supplemental Response to Plaintiff's Third Interrogatories at 3). Ironically, four days later, after an "anonymous telephone call," the Executive Director of the MPOETC sought verification of Risk's

---

[2] To the extent evidence of Risk's decertification is relevant at the remedies stage (a point to which Risk does not concede), he has asked the Court to bifurcate the trial into liability and damages phases.  (*See* Plaintiff's Motion in Limine to Exclude After-Acquired Evidence of Plaintiff's Police Certification, or in the Alternative, to Bifurcate, Docket Number 05-1068).  Defendant has cited cases where district courts have used their discretion in deciding not to bifurcate, but provides no explanation why this Court would abuse its discretion by bifurcating the trial based on the facts of this particular case.

employment history, and then began an investigation into his qualifications. (Proposed Adjudication and Order (A&O) at 8).  In other words, Defendant's own questionable conduct, well after Risk's termination, causes the after-acquired evidence to even exist.

Further, Defendant seeks to distract the Court with irrelevant issues using a manner which this Court has already found inappropriate.  *See* Mavrinac v. Emergency Med. Ass'n of Pittsburgh, 04-1880, 2007 WL 2908007 (W.D. Pa. Oct. 2, 2007)(Fischer, J.)("if the moving party is seeking a ruling that goes beyond an evidentiary determination, there is a strong likelihood that the motion in limine deals with an inappropriate matter ... Motions in limine are inappropriate vehicles to seek a final determination with respect to a substantive cause of action, and should not be used as a substitute for summary judgment").

Weeks before trial, and months after discovery has closed, Defendant presents a newfound theory of why the Court should dismiss the case as a matter of respect for the federal-state system. However, the underlying assumption to these arguments is that the current validity of Risk's Pennsylvania police certification is somehow relevant to the issues in this case.  To the contrary, the meaning Pennsylvania assigns to police certification is *not* relevant.  Risk has the right to be free from religious discrimination regardless of whether state law provides him with a "right" to a job. Therefore, as more fully set forth below, this Court should not admit evidence of Plaintiff's police decertification, and should not dismiss or stay the proceedings.

II.     **RISK'S SUBSEQUENT DECERTIFICATION IS IRRELEVANT FOR PURPOSES OF DETERMINING HIS QUALIFICATIONS AT THE TIME DEFENDANT TERMINATED HIM.**

    A.     **Risk's Job Qualifications are Evaluated from the Employer's Subjective Belief at the Time that it Made the Adverse Employment Decision, Not What it Learned Later.**

Because Defendant does not claim it believed Risk was unqualified for his job when it made the decision to fire him, Risk was not "unqualified" for purposes of his prima facie case.

To determine whether a plaintiff is "qualified," "what is relevant to the inquiry is the employer's subjective assessment of the plaintiff's qualifications, not the plaintiff's objective ones if unknown to the employer." Mardell I, 31 F.3d at 1230.  Moreover, a defendant "can only rely on a legitimate motive it held *at the time of the adverse employment decision*." Id. at 1229 (emphasis in original).  Further, "after-acquired evidence is irrelevant at the *liability* stage." Id. at 1228(emphasis added).  Since the prima facie element of "qualification" is determined at the liability stage, after acquired-evidence must also be irrelevant in that determination.

More recently, in an Americans with Disabilities Act case, the Third Circuit held that the issue of qualification "is not made from the time the lawsuit was filed or any other later time period, but from *the point at which the alleged discriminatory decision was made*." Bowers v. NCAA, 475 F.3d 524, 536 (3d Cir. 2007)(emphasis added).  In that case, like here, the defendants attempted to use after-acquired evidence of the plaintiff's drug abuse to assert that he was unqualified to play sports at any university at the time it made its decision to disqualify him. Id. at 534.  The Third Circuit rejected this: "Defendants' argument that Bowers was unqualified at the relevant time frame as a result of his drug abuse rests on the erroneous assumption that Defendants could have used evidence of Bowers' drug abuse as an after-the-fact justification for their allegedly discriminatory conduct." Id. at 537.  Citing

4

<u>McKennon</u>, the court held the defendants could not claim that the plaintiff was unqualified based on after-acquired evidence. <u>Id.</u>  **Therefore, it is clear that the Third Circuit interprets <u>McKennon</u> not just to bar the use of after-acquired evidence as a legitimate non-discriminatory reason, but also to preclude such evidence for purposes of determining whether a plaintiff is "qualified."**

Defendant cites <u>McConathy v. Dr.Pepper/Seven Up Corp.</u>, 131 F.3d 558, 562 (5th Cir. 1998) for the proposition that <u>McKennon</u> does not apply for purposes of determining qualification. (Defendant's Brief at 18).  However, <u>McConathy</u> is inconsistent with the precedent of the Supreme Court and this Circuit.  <u>McConathy</u> involved the issue of whether a plaintiff was estopped from alleging she was a "qualified individual with a disability" under the Americans with Disabilities Act because she claimed to be totally disabled on a social security application.  131 F.3d 558, 562 (5th Cir. 1998).  The Fifth Circuit relied on its prior decision, <u>Cleveland v. Policy Mgmt. Sys.</u>, 120 F.3d 513 (5th Cir. 1997), which created a rebuttable presumption of ADA estoppel for recipients of social security benefits.  However, the Supreme Court subsequently reversed <u>Cleveland</u>, holding that no such presumption applies.  *See* 526 U.S. 795, 797-98 (1999).

Moreover, <u>McConathy</u> involved very different circumstances.  There, the plaintiff asserted on an official document that she was unable to perform her job *at the time of her termination.*  131 F.3d at 562.  Evidence of this sort can be construed as an admission by the plaintiff that she was unqualified at the time of the adverse employment decision.  Further, she alleged her employer *knew* of her potentially-disqualifying medical condition at the time she was terminated, and thus, it was possible that the knowledge could have motivated its decision.  <u>Id.</u> at 561. Risk, however, made no such admission, and Defendant has admitted both that Risk was certified at the time it fired him, and that

5

it did not investigate whether there was a reason that he should be decertified.[3]  As such, <u>McConathy</u> is not on point.

### B.     Plaintiff's Loss of Certification Did Not Deprive Him of His Federal Protection from Discrimination.

Irrespective of whether Defendant had a "right" to his job, Defendants were not free to discriminate against him because of his religion.  Defendant argues that Risk was not qualified because he was "stripped ... of **any property interest** he possessed in the certification" (Defendant's Brief at 7)(emphasis added). However,  the **"'property right' inquiry is irrelevant** for the simple reason that ... Title VII... operate[s] from the backdrop of at-will employment, meaning that the employee is presumptively *not* entitled to the job, irrespective of resume fraud or performance misconduct." <u>Mardell I</u>, 31 F.3d at 1233 (emphasis added). Therefore, Defendant's argument that Risk was not qualified because he lost "any property rights or interests stemming from" his police certification is beside the point.[4]  (*See* Defendant's Brief at 8, quoting <u>Keely v. Pa. Real Estate Comm'n</u>, 501 A.2d 1155, 1158 (Pa. Commw. Ct. 1985)).   In other words, Defendant "confuses the question of whether the employer injuriously discriminated against the employee with the question whether the employee had entitlement to the job." <u>Id.;</u> *see also* <u>Mardell II</u>, 65 F.3d at 1074 ("the protections of Title VII ... are grounded not in a plaintiff's 'right' to a particular job but in a federal proscription of *discrimination* in employment") (emphasis in original).

---

[3]  In fact, Defendant did not learn of the possibility of Risk losing his certification until well into this litigation, as explained in Part I.

[4]  Similarly, parts II through V of Defendant's Brief are meritless because the validity of Risk's certification, and subsequent decertification, have no bearing on the issues in this case.  Since the right at issue here is not the right to police certification (a matter of state law), but the right to be free from discrimination (an *unrelated* matter of federal law), the pending state proceedings do not present a conflict, and do not require this Court to abstain from hearing this case.

The authority cited by Defendant does not compel a different result.  <u>Keely</u> involved a real estate broker who petitioned for reinstatement of his revoked license, 501 A.2d at 1156, and <u>Pittinger v. Pa. Dep't of State</u> dealt with a medical doctor under similar circumstances. 596 A.2d 1227, 1228 (Pa. Commw. Ct. 1991).   In both cases, the Commonwealth Court of Pennsylvania held that the plaintiffs were not entitled to due process in applying for reinstatement because they longer held valid property interests in their revoked licenses. 501 A.2d at 1158; 596 A.2d 1230.

It does not at all follow from the above-cited cases that an employer may discriminate against an employee who was later determined to have been issued a certification in error.   Rather, Pennsylvania law merely provides that, as a procedural matter, a licensing board does not have to accord due process to a person who reapplies for a properly-revoked license.  Risk, on the other hand, is not claiming a current property interest in his police certification.   Rather, he alleges that his employer discriminated against him because of his religion.  As demonstrated above, the right to be free from discrimination is separate and distinct from the "right" to hold a particular job.  *See, e.g.,* <u>Mardell I</u>, 31 F.3d at 1233; <u>Mardell II,</u> 65 F.3d at 1074.   Therefore, regardless of the status of Risk's certification, the right which is violated "is not the employee's right to the job, but the employee's right to equal, fair, and impartial treatment..."  31 F.3d at 1232.

## III.    RISK'S DECERTIFICATION SHOULD NOT BE ADMITTED FOR PURPOSES OF ASSESSING HIS CREDIBILITY

### A.    The Revocation of Risk's Certification is Not Probative of Risk's Credibility Under Fed. R. Evid. 608(b).

Under Fed. R. Evid. 608(b), the Court has discretion to allow a party to inquire into specific instances of conduct on cross examination "if probative of truthfulness or untruthfulness."  Fed. R. Evid. 608(b).  Here, Risk's decertification is *not* probative of untruthfulness, and as such, should not

be admitted for that purpose.

According to the A&O, Risk's certification was issued "in error." (A&O at 15).   The Commission did not determine Risk committed any fraudulent or dishonest acts, even though, as Defendant points out, the Commission has the right to revoke certification based on the "[s]ubmission of a document that the police officer knows contains false information including fraudulent application." 37 Pa. Code § 203.14(a)(7); Defendant's Brief at 5.  In fact, the A&O states:

> Risk did not indicate on his application that he worked as a full-time patrolman in Ohio; he simply listed his previous employment in the space provided.  Moreover, the fact that staff sought confirmation of the Amsterdam Police Department that Risk was employed full time suggests that the staff did not instinctively infer from Risk's response that he was employed full-time.  In addition, the certification that Risk signed when completing his application does not state that Risk "*has read, understands and certifies that he meets the requirements for a waiver of training* and that this form contains no misrepresentations or falsifications, omissions or concealment of material fact..."

(A&O at 15, n.6)(emphasis in original).

Unlike the cases cited by Defendant, Risk's decertification is not *relevant* to a central issue in this case. In Vichare v. Ambac Inc., the Fifth Circuit found it was within the district court's discretion to allow testimony regarding after-acquired evidence of the plaintiff's wrongdoing. 106 F.3d 457, 466-68.   However, the defendants brought a breach of fiduciary counterclaim based on his alleged acceptance of "kickbacks," and "the allegation that he had been secretly taking kickbacks was obviously relevant to his credibility." Id. at 468.  Further, he was the "crucial witness" on his own discrimination claim, making his credibility "essential to the case." Id.

Here, on the other hand, Risk's decertification  is not relevant to whether defendants discriminated against him, *see, e.g.,* McKennon, 513 U.S. at 359-60; Mardell I, 31 F.3d at 1228,  and there are no other claims in this case to which it is relevant.  Further, Risk is not the "crucial witness"

in this case.  There is documentary evidence (e.g., Risk's personnel file), some allegations have been admitted by the Defendant (e.g., that it fired Risk and that it required him to remove a cross pin from his lapel), and there is at least one other witness, Amy Prevost, who will testify about the discriminatory comments of Defendant's personnel.  In other words, it is not absolutely required that the jury believe Risk in order to find that Defendant discriminated against him.  Therefore, Vichare does not demonstrate that Risk's decertification is probative of his credibility on these particular facts.

In Adelman v. GMAC Mortgage Corp., the court, using its discretion, admitted after-acquired evidence of the plaintiff's resume fraud under Rule 608(b). No. Civ. A. 97-691, 1998 WL 51131 (E.D. Pa. 1998).  However, Adelman presented a much clearer case of evidence probative of untruthfulness. First, the plaintiff admitted to "knowingly" making misrepresentations on his resume and applications. Id. at *1.  Here, on the other hand, Risk does not admit to making any misrepresentations, and the MPOETC did not even find that he made any.  Second, based on the court's review of the defendant's motion for summary judgment and the plaintiff's response, it was "apparent...that the plaintiff's credibility will be a critical issue."  Id. at *2.  However, as explained above, Risk's credibility is not a "critical issue" in this case.   Further, the court in Adelman stated that Rule 608(b) "is intended to be restrictive and the inquiry on cross-examination **should be limited to specific modes of conduct which are generally agreed to indicate a lack of truthfulness**." Id. at *1 (quoting 3 J. Weinstein & M. Berger, *Evidence* ¶ 608[05] (1975))(emphasis added). Since not even the MPOETC found that Risk made any untruthful statements after a thorough investigation and hearing, it can hardly be said that he engaged in a mode of conduct "generally agreed to indicate a lack of truthfulness." *See* id.

Moreover, and perhaps most importantly, Rule 608(b) allows a party to cross-examine about specific instances of conduct "in the discretion of the court, if probative of truthfulness or

untruthfulness..." Fed. R. Evid. 608(b).  The courts in <u>Adelman</u> and <u>Vichare</u> first determined that the conduct at issue was probative of untruthfulness, and only then made the discretionary call to admit the testimony.  Here, Risk's lack of certification is either *not* probative of a character for truthfulness, or at the very most is so minimally probative that this Court should not to allow cross-examination into the circumstances surrounding his police decertification.

**B.      Even if Risk's Decertification is Slightly Probative of Credibility, it Should be Excluded under Rule 403 Because it will Waste Significant Time.**

The "error" upon which the revocation of certification was based centers around whether Risk was a "full time" officer in Ohio before applying for a waiver in Pennsylvania.  The MPOETC "leaves it up to the civil service laws of the governing agency that is submitting the [out-of-state police] letter to make the determination that the person has met that state's standards for 'full-time.'" (A&O at 15, n.7).  Therefore, if Defendant is allowed to introduce evidence of Risk's decertification to impeach his credibility, then Plaintiff's counsel would be forced to rebut that evidence.  This would include putting Risk's former supervisor on the stand to determine what he understood to be the meaning of the phrase "full-time," and  Risk would also have to testify about his understanding of that term.  In addition, Plaintiff would introduce evidence about the meaning of "full-time" under Ohio law, and how it might vary from the meaning of that term under Pennsylvania law.

In other words, by seeking to introduce evidence of Risk's decertification, Defendant would create a mini-trial on the definition of "full-time" under Ohio law, and on Risk's and his former supervisor's understanding of that term.  These issues are only very tenuously, if at all, related to the merits of this case.  Further, the decertification is not very probative to show Risk's lack of credibility, given that the MPOETC did not find that he lied even though it could have under Pennsylvania

10

regulations.  This would be a significant waste of time, and is also likely to confuse and distract the jury from the central issues in this case.

Therefore, in addition to the reasons stated in Plaintiff's Motion in Limine to Exclude After-Acquired Evidence of Plaintiff's Police Certification, this evidence should be excluded under Fed. R. Evid. 403 because its probative value is substantially outweighed by the time it will waste and the danger of jury confusion. *See* United States v. Bocra, 623 F.2d 281, 288 (3d Cir. 1980)("Rule 608(b) is meant to tie into Rule 403); Advisory Committee Notes to Fed. R. Evid. 608   ("the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury...").

### C.   Even if this Court Allows Testimony about Risk's Decertification, Extrinsic Evidence is Inadmissible.

Rule 608(b) plainly states, "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness ... may **not** be proved by extrinsic evidence." Fed. R. Evid. 608(b)(emphasis added).  Therefore, even if this Court finds that Defendant is entitled to introduce evidence of Risk's decertification for purposes of credibility, that evidence would necessarily be limited to cross-examination. *See, e.g.,* United States v. Ferrell, 625 F. Supp. 41, 43 (E.D. Pa. 1985), *affirmed* 815 F.2d 696 (3d Cir. 1987)("[w]hen information is solicited by cross-examination on collateral matters, the cross-examiner must accept the witness' statements").

Defendant identified as documents that it may use in support of its defense (1) Terryn Risk's Certification file from the MPOETC" ( Supplemental Rule 26 Disclosures, ¶3), and (2) "Correspondence from MPOETC to Terryn Risk dated July 19, 2006 pertaining to status of Municipal Police Certification." (Disclosures, ¶4).  However, these documents are indisputably the type of

extrinsic evidence prohibited under Rule 608(b). *See, e.g.,* <u>United States v. Martz</u>, 964 F.2d 787, 789 (8th Cir. 1992), *cert denied,* 506 US 1038 (1992)("[w]hile documents may be admissible on cross-examination to prove a material fact, or bias, they are not admissible under Rule 608(b) merely to show a witness' character for truthfulness")(citations omitted); <u>United States v. Elliott</u>, 89 F.3d 1360, 1368 (8th Cir. 1996)(applying <u>Martz</u> to deny admission of a resume offered to prove lying about qualifications).   Similarly, Defendant cannot offer any other witness' testimony about Risk's decertification.   *See* <u>United States v. Bocra</u>, 623 F.2d 281, 288 (3d Cir. 1980)("[u]nder no circumstances would [Defendant be allowed to introduce rebuttal testimony] without violating the extrinsic evidence prohibition of [Rule 608(b)] ... [Defendant] would have to 'take his answer' and would not be able to introduce rebuttal testimony)."

## IV.   EVIDENCE OF PLAINTIFF'S DECERTIFICATION ONLY AFFECTS EQUITABLE REMEDIES TO BE DECIDED BY THE COURT, NOT THE JURY

To the extent that this Court finds that evidence of Plaintiff's decertification is relevant at the remedies stage, this after-acquired evidence is still only relevant to issues to be decided by the Court. Therefore, there is no reason for the jury to hear the evidence.

The Third Circuit recently reaffirmed its prior holdings that back pay in a Title VII case is a "form of equitable relief awarded at the discretion of the court." <u>Spencer v. Wal-Mart Stores, Inc.</u>, 469 F.3d 311, 315 (3d Cir. 2006).  Although the Civil Rights Act of 1991 first introduced the right to a jury trial for plaintiffs seeking compensatory damages, it "does not have a provision stating that parties seeking back pay may request a jury trial."   <u>Id.</u> at 316 (citing 42 U.S.C. § 1981a(c)).  As a result, "it is obvious that back pay remains an equitable remedy to be awarded within the discretion of the court." <u>Id.</u>

12

It follows that reinstatement is also to be decided by the Court.   Spencer pointed out that the Act "further differentiates back pay from compensatory damages, stating that '[c]ompensatory damages ... shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g)...'" Id. (Citing 42 U.S.C. § 1981a(b)(2). Section 706(g) also states, "the court may ... order such affirmative action as may be appropriate, which may include, but is not limited to, **reinstatement** or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1)(emphasis added).   Therefore, it is clear under Spencer that reinstatement is a type of equitable relief to be decided by the Court.

Read together, McKennon, Mardell, and Spencer mandate that after-acquired evidence does not affect the jury question of the employer's liability, and it does not even affect the types of remedies that the jury is allowed to award.   According to McKennon and Mardell, after-acquired evidence, in the appropriate case, may limit the amount of back pay and reinstatement.[5] McKennon, 513 U.S. at 362; Mardell I, 31 F.3d at 1240; Mardell II, 65 F.3d at 1073.   Under Spencer, back pay and reinstatement are decided by the Court. Spencer, 469 F.3d at 315-16.   Therefore, the after-acquired evidence is not relevant to the jury for any purpose.

---

[5] In the Third Circuit, the amount of front pay , at least in ADEA claims, is a jury question. *See* Maxfield v. Sinclair Intern., 766 F.2d 788, 796 (3d Cir. 1985), *cert. denied*, 474 U.S. 1057 (1986).   The Maxfield holding is dubious given the reasoning in Spencer, as well other circuits' holdings that front pay is an equitable remedy. *See, e.g.,* Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1100 (8th Cir. 1982);   Dominic v. Consol. Edison Co. Of N.Y., Inc., 822 F.2d 1249, 1258 (2d Cir. 1987); Deloach v. Delchamps, Inc., 897 F.2d 815, 823 (5th Cir. 1990).   In any event, contrary to Defendant's assertion, Plaintiff has not brought a "front-pay claim." *Compare* Defendant's Brief at 20 *with* Plaintiff's Second Amended Complaint, Counts V and VI, at 9-11.   Therefore, it is unnecessary to address front pay.   In the event this Court disagrees, or concludes that the jury should award front pay in lieu of reinstatement, there is still no reason for the jury to hear after-acquired evidence at the liability stage. Thus, bifurcation would be appropriate.

## V.      PLAINTIFF'S DECERTIFICATION IS NOT A BAR TO REINSTATEMENT.

### A.      Reinstatement in This Case is Not Inconsistent with Relevant Precedent.

Contrary to Defendant's reading of <u>McKennon,</u> the Court did not establish an absolute bar to reinstatement.  Rather, the Court stated that the "proper boundaries of remedial relief in the general class of cases where, after termination, it is discovered that the employee has engaged in wrongdoing must be addressed by the judicial system in the ordinary course of further decisions, for the factual permutations and the equitable considerations they raise will vary from case to case." 513 U.S. at 361. The Court further stated, "*as a general rule in cases of this type*, neither reinstatement nor front pay is an appropriate remedy." <u>Id.</u> (emphasis added).

However, Plaintiff does not present a "case of this type." *See* <u>id.</u>  The after-acquired evidence in <u>McKennon</u> was that the plaintiff, *before being terminated*, took home confidential documents about her employer's financial condition, photocopied them, and showed them to her husband.  <u>Id.</u> at 355. Similarly, in <u>Mardell</u>, the plaintiff misrepresented her qualifications on her resume and application. <u>Mardell I</u>, 31 F.3d at 1223.  Here, Defendant states that the "revocation of Plaintiff's police officer certification satisfies McKennon's 'severity' requirement.'" (Defendant's Brief at 21).  However, Risk's decertification did not even occur until *after* his termination.  This distinguishes Risk's case from <u>McKennon</u> and <u>Mardell</u> because in those cases, the employer alleged that it would have had grounds to fire the plaintiffs had it known all relevant facts available at that time. <u>McKennon</u>, 513 U.S. at 355; <u>Mardell I</u>, 31 F.3d at 1224.  Since Risks's decertification did not occur until after his termination, the defendants could not fire him on that basis, even had it known all relevant facts available at the time.[6]

---

[6]Defendant only names Risk's decertification as the after-acquired evidence that would have allowed it to fire him, which, as explained, is wrong because the decertification did not even happen until after it fired him.

(continued...)

14

**B.      Reinstatement is Feasible Because Certification is Feasible.**

While it may be true that Risk cannot work as a police officer while uncertified, nothing precludes him from obtaining certification.  While Defendant would have this Court believe that certification entails a rigorous and time-consuming educational process, and that Risk is somehow "disbarred" from ever being a police officer in Pennsylvania again, certification is actually a relatively simple process.

The qualifications for a Pennsylvania municipal police officer are that the individual must be at least 18 years old; possess a high school education or equivalent, be a United States citizen; not have a significant criminal record; be able to read at a ninth-grade level, pass physical, psychological, and fitness examinations; pass a background check; and pass a basic training course or obtain a waiver.  37 Pa. Code. § 203.11(a).   Basic training includes a firearms test; First Aid and CPR certification; complying with school regulations; passing a certification exam; attending 100 percent of classes; and achieving a passing grade in the course.  Id. at § 203.11(a)(11).   The certification course for full-time students takes four to five months to complete.  *See* MPOETC Recruit Training Schedule, *available at* http://www.mpoetc.state.pa.us/mpotrs/cwp/ view.asp?a=1133&q=441479.

In revoking Risk's certification, the MPOETC did not prohibit Risk from reapplying for certification, and did not even suspend him from seeking certification for any period of time.  Further, nothing in the applicable statute or regulations precludes an individual with a revoked certification from reapplying.   Therefore, all Risk needs to do to be eligible for reinstatement is to complete the

---

[6](...continued)
Defendant does not allege that it would have fired Risk had it known that he "lied" in order to obtain his certification.  Indeed, to make such an argument would be a misstatement of the facts and the MPOETC's determination.

requirements of 37 Pa. Code § 203.11(a).  Given that Risk was successfully employed as a police officer by Defendant and also in Ohio, there is no reason to doubt his ability to pass the required training course.

Further, the regulations provide that an individual can have a conditional offer of employment while enrolled in the training course. *See* 37 Pa. Code § 203.11(11)(D)(stating that an applicant without a conditional offer of employment from a police department must pay an examination fee, whereas individuals with a conditional offer do not pay the fee).  Therefore, this Court has the discretion to award Risk reinstatement conditional on his obtaining certification.

## VI.    PLAINTIFF'S DECERTIFICATION DOES NOT PRECLUDE AN AWARD OF BACK PAY.

According to the Supreme Court in <u>McKennon</u>, "[a]n absolute rule barring any recovery of backpay ... would undermine [employment discrimination laws'] objective of forcing employers to consider and examine their motivations, and of penalizing them for employment decisions that spring from ... discrimination."  <u>Id.</u>, 513 U.S. at 362.  Although "the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party," <u>id.</u>, it does not follow that back pay should be denied in this case.

Neither the Supreme Court nor the Third Circuit has explained how "extraordinary equitable circumstances" might affect an award of back pay.  *See* <u>Mardell II</u>, 65 F.3d at 1074 n.4 ("[w]e make no effort at this juncture to adumbrate the contours of the 'extraordinary equitable circumstances' doctrine")(citation omitted).  Instead, they left the interpretation to the district courts, and unfortunately, there are no reported district court proceedings on remand. Defendant also cites no other interpretations of this doctrine.  Whatever it means, it certainly does not apply to this type of case.

Both <u>McKennon</u> and <u>Mardell</u> involved acts of "fraud," and the courts still did not hold that the "equitable circumstances" doctrine precluded an award of back pay as a matter of law.  Here, as explained in Part V above, Risk did not commit a fraudulent act, and his decertification did not occur until *after* Defendant fired him.  Therefore, this case does not present an extraordinary equitable circumstance weighing against an award of back pay. If anything, it would be extraordinarily inequitable to allow Defendants to get away with religious discrimination on the basis of its counsel's after-the-fact decision to investigate Risk's qualifications, and the subsequent "anonymous tip" from Defendant that resulted in the MPOETC revoking his certification. *See* <u>Mardell I</u>, 31 F.3d at 1237 ("barring all remedies would leave the victim in a *worse* position than had the employer not unlawfully discriminated against him or her ... and elevates the employer to a superior position insofar as it lets the employer get off scot-free despite its blameworthy conduct")(emphasis in original).[7]

## VII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court deny Defendant's In Limine Motion to Dismiss or for Other Relief.  Further, Plaintiff renews its request not to admit after-acquired evidence of Plaintiff's police decertification, or in the alternative, to bifurcate the trial and only admit such evidence for purposes of damages.

---

[7]There is, of course,  another side to the "balance of equities"  the Supreme Court and Third Circuit alluded to in <u>McKennon</u> and <u>Mardell</u>.  Both the timing and circumstances Defendant's offer of an  "anonymous tip" concerning Risk strongly points to a finding that it was taken in retaliation for Risk's filing suit under Title VII.  As the Third Circuit noted in <u>Mardell I</u>, Defendant's strategy of investigating an employee who filed a discrimination complaint with the intent to discover evidence retroactively justifying or excusing the adverse employment decision may itself violate Title VII's retaliation statute, because it is an adverse action taken "because [Risk] has opposed [a] practice made unlawful [by Title VII]...[and] because [Risk] has...participated in..an investigation, proceeding or hearing [under Title VII]. <u>Mardell I</u>, 31 F.3d at 1238 n. 31. *See also* <u>Burlington N & Santa Fe.Ry. Co v. White</u>, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006)(plaintiff claiming retaliation under Title VII need only show that reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination"); <u>Id.</u>, 126 S.Ct. at 2414 (scope of Title VII's retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm).

Respectfully submitted,

**OGG, CORDES, MURPHY & IGNELZI**

/S/ Samuel J. Cordes
Samuel J. Cordes
Tiffany R. Waskowicz

Pa. I.D. No. 54874 (Cordes)
Pa. I.D. No. 202933 (Waskowicz)

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 471-8500

Attorneys for Plaintiff

18

## CERTIFICATE OF SERVICE

I hereby certify on this 11th day of March, 2008, I served a copy of the foregoing ***Plaintiff's Brief in Opposition to Defendants' In Limine Motion to Dismiss or for Other Relief*** via electronic mail upon the following:

Teresa O. Sirianni
Marshall Dennehey Warner Coleman
& Goggin
Suite 2900
600 Grant Street
Pittsburgh, PA 15219

/S/ Samuel J. Cordes
Samuel J. Cordes