**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TERRYN RISK,                    )
                                    )
              Plaintiff,     )
                                    )
          v.              )     Civil Action No. 05-1068
                                    )
BURGETTSTOWN BOROUGH,   )     Magistrate Judge Lisa Pupo Lenihan
PENNSYLVANIA,           )
                                    )     Re: Doc. No. 121
              Defendant.    )

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is presently before the Court on Defendant's Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b), or for a New Trial pursuant to Fed. R. Civ. P. 59. The parties are familiar with the background of the case and it need not be restated here. After a four day trial, the jury returned a verdict in favor of Plaintiff Terryn Risk, finding that the Defendant unlawfully discriminated and retaliated against Plaintiff because of his religion. For the reasons discussed below, Defendant's Motion for Judgment as a Matter of Law, or for a New Trial at Doc. No. 121 is denied.

I.    **<u>LEGAL STANDARDS</u>**

    A.    **<u>MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**

"[J]udgment as a matter of law should be granted sparingly." <u>Walter v. Holiday Inns, Inc.</u>, 985 F.2d 1232, 1238 (3d Cir. 1993). A motion for judgment as a matter of law

"should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving the nonmovant the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993) (citing Wittekamp v. Gulf & Western Inc., 991 F.2d 1137, 1141 (3d Cir. 1993)). The standard for granting judgment as a matter of law "mirrors" the standard for summary judgment, such that "the inquiry under each is the same." Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)) (other citations omitted). Thus, the court must view all evidence in the record. Id. It may not weigh the parties' evidence or determine the credibility of the witnesses. Id. Also, the court must not substitute its version of the facts for that of the jury. Lightning Lube, 4 F.3d at 1166. Further, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves, 530 U.S. at 151. In Reeves, the United States Supreme Court further explained that the district court "should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" Id. (other citation omitted). Although a Rule 50(b) motion should be granted sparingly, "a scintilla of evidence is not enough to sustain a verdict of liability." Lightning Lube, 4 F.3d at 1166 (citing Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993)). "'The question is not whether there is literally no evidence supporting the party against whom the motion is directed, but whether there is evidence upon which the jury could properly find a verdict for that party.'" Id. (quoting Patzig v. O'Neil, 577 F.2d 841, 846 (3d Cir. 1978)). See generally 9 Moore's Federal Practice §§ 50.60, 50.62, 50.63, 50.64 (3d ed.

2008).

Finally, in determining whether there is a legally sufficient evidentiary basis for the verdict, erroneously admitted evidence will play no role in the court's application of the appropriate legal standard.  <u>Weisgram v. Marley Co.</u>, 528 U.S. 440, 457 (2000).

## B.  MOTION FOR NEW TRIAL

In addition to its Rule 50(b) motion, the Defendant has moved, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59.  Rule 59 states in relevant part as follows:

> Rule 59.  New Trial; Altering or Amending a Judgment
> (a) In General.
> > (1) **Grounds for New Trial.**  The court may, on motion, grant a new trial on all or some of the issues–and to any party–as follows:
> > > (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]

Fed. R. Civ. P. 59(a).

The ordering of a new trial pursuant to Rule 59 is within the sound discretion of the district court.  <u>Wagner v. Fair Acres Geriatric Ctr.</u>, 49 F.3d 1002, 1017 (3d Cir. 1995).  Reasons for granting a new trial include verdicts which are against the weight of the evidence or prejudicial errors of law.  <u>Klein v. Hollings</u>, 992 F.2d 1285, 1289-90 (3d Cir. 1993).  When the basis for the motion is an alleged error concerning the court's evidentiary rulings or jury instructions, a district court must first determine whether an error was made during the course of the trial, and then determine "whether that error was so prejudicial that refusal to grant a new trial would be 'inconsistent with substantial justice.'"  <u>Bhaya v. Westinghouse Elec. Corp.</u>, 709 F.

Supp. 600, 601 (E.D. Pa. 1989) (quoting Fed. R. Civ. P. 61), aff'd, 922 F.2d 184 (3d Cir. 1990).

Whether any error committed by the court was harmless is governed by Federal Rule of Civil

Procedure 61.[1]  Trial errors are considered harmless when "it is highly probable that the error did

not affect the outcome of the case."  McQueeney v. Wilmington Trust Co., 779 F.2d 916, 917

(3d Cir. 1985).  "Unless a substantial right of the party is affected," a non-constitutional error in

a civil case is harmless.  Linkstrom v. Golden T. Farms, 883 F.2d 269, 269 (3d Cir. 1989).

"Absent a showing of substantial injustice or prejudicial error, a new trial is not warranted and it

is the court's duty to respect a plausible jury verdict."  Montgomery County v. MicroVote Corp.,

152 F. Supp.2d 784, 795 (E.D. Pa. 2001).

      The United States Court of Appeals for the Third Circuit has indicated, however, that

the district court's discretion to grant a new trial is more limited when the alleged ground is that

the verdict is against the weight of the evidence.  Greenleaf v. Garlock, Inc., 174 F.3d 352, 366

(3d Cir. 1999).  In this instance, new trials "'are proper only when the record shows that the

jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to

be overturned or shocks our conscience.'"  Greenleaf, 174 F.3d at 366 (quoting Williamson v.

Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991)); EEOC v. Delaware Dep't of Health

---

[1]Fed. R. Civ. P. 61, as amended in 2007, provides as follows:

**Rule 61.          Harmless Error**

      Unless justice requires otherwise, no error in admitting or
excluding evidence – or any other error by the court or a party – is
ground for granting a new trial, for setting aside a verdict, or for
vacating, modifying, or otherwise disturbing a judgment or order.
At every stage of the proceeding, the court must disregard errors
and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61; cf. Fed. R. Evid. 103(a) ("Error may not be predicated upon a ruling
which admits or excludes evidence unless a substantial right of the party is affected.").

and Soc. Servs., 865 F.2d 1408, 1413 (3d Cir. 1989). "[T]his stringent standard is necessary to ensure that a district court does not substitute its judgment of the facts and credibility of the witnesses for that of the jury." Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1076 (3d Cir. 1996) (citations omitted).

Unlike a motion for judgment as a matter of law pursuant to Rule 50, the court is not compelled to view the evidence in the light most favorable to the nonmovant. Whelan v. Teledyne Metal Working Prods., 2006 WL 39156 *7 (W.D. Pa. 2006) (citing Bullen v. Chaffinch, 336 F. Supp.2d 342, 347 (D.Del. 2004). Further, the movant bears the burden of proof on a motion for a new trial. Id. (citation omitted).


II.    **ANALYSIS**

Defendant's initial arguments state that certain evidence should not have been admitted at trial, "both in terms of what should not be considered in determining whether or not there is a legally sufficient evidentiary basis for the verdict, and in terms of whether defendant is entitled to a new trial." (Defendant's Brief in Support of its Motion for Judgment as a Matter of Law and for a New Trial, Doc. No. 136 at 8) [hereinafter "Doc. No. 136 at __ ]. Specifically, Defendant raises the following contentions of error: 1) the admission of evidence, argument, and jury instruction regarding the Defendant's alleged violation of the Police Tenure Act; 2) the admission of evidence, argument, and jury instruction regarding Plaintiff's cross pin; 3) the admission of evidence and argument contesting Plaintiff's decertification; 4) evidence and argument regarding Plaintiff's off-duty expression of an opinion to Amy Prevost about what Borough Council might do; 5) the introduction of Dan Johnson's testimony after both Plaintiff

and Defendant had completed the presentation of their cases; and 6) the evidence and adverse inference instruction regarding the non production of audiotapes. (Doc. No. 136 at 8.) Defendant submits the above arguments in support of both its Motion for Judgment as Matter of Law, or in the alternative, Motion for a New Trial. Later in its Brief in Support of its Motion for Judgment as a Matter of Law, or for a New Trial, Defendant includes two additional sections, one containing arguments relating only to its Motion for Judgment as a Matter of Law, and the other containing arguments relating only to its Motion for a New Trial. These arguments will be included with the above arguments in their respective sections of this Memorandum Opinion.

A. **Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b)**

Defendant argues that the Court erred in admitting certain evidence, and that had this evidence been excluded, there would have been insufficient evidence to support the jury's conclusion.

　　1.　The admission of evidence regarding the Defendant's alleged violation of the Police Tenure Act

The Court took judicial notice of the Pennsylvania Police Tenure Act solely because its seniority provisions were relevant to pretext; that is, layoffs must occur in reverse order of seniority, and Risk had been hired before others who were not furloughed. See 53 P.S. § 813. Defendant argues that by its terms, the Police Tenure Act does not apply to Defendant's police force because it has more than three members. See 53 P.S. § 811. Citing to 53 P.S. § 46190 and § 46171, Defendant also argues that although the Borough Code does apply to any borough

having a police force of three or more members, part-time, hourly officers like Risk are not included in the definition of "police force." Consequently, Defendant argues that neither the Borough Code nor the Police Tenure Act apply in this case, and the Court erred in taking judicial notice that the Police Tenure Act, with its seniority provisions, applied to Plaintiff. In response, Plaintiff argues that the Borough Code, which also provides for layoffs in order of reverse seniority, defines "police force" as those who devote their normal working hours to police duty, rather than those defined as "special police" including metermaids, special school police, "extra police" serving from time to time or on an hourly or daily basis, and auxiliary policemen. See 53 P.S. § 46195. Plaintiff notes that Risk devoted normal working hours to police duty, and therefore would fall under the protections of the seniority furlough provision. Plaintiff concludes that regardless of whether the Police Tenure Act or Borough Code applies, the reverse seniority furlough provision applies to Risk and the Court's judicial notice that the Police Tenure Act applied would be harmless error.

Whether the Police Tenure Act or Borough Code applies, Risk was protected by the seniority furlough provisions. Although Plaintiff had another job as a school bus driver, no evidence was presented at trial that Plaintiff was ever unavailable when needed by Defendant; in fact, Risk's other job in no way conflicted with the needs of Defendant: Chief Roberts worked alone during these hours and consequently, would have no need to schedule Plaintiff during that time. Moreover, no evidence was presented that Plaintiff's duties placed him within the definitions of "special police," "extra police," or "auxiliary policemen." Even if the Court were to excise this evidence regarding furlough on the basis of seniority, the evidence of pretext presented at trial was sufficient to support the jury's verdict as will be discussed at Part II. A. 9.,

infra.

### 2. The cross pin

On summary judgment, the Court granted judgment as a matter of law on Counts I through IV of Plaintiff's Complaint holding that "[p]laintiff Risk can premise no claim of Constitutional violation on a restriction of his right to wear a symbol of his Christian beliefs on the lapel of his police uniform while performing his duties in the community." (Doc. No. 49 at 6.) Defendant now argues that in light of this ruling on summary judgment, the Court erred in allowing Risk to introduce evidence that Chief Roberts repeatedly asked Risk to remove his cross pin. Defendant contends that in light of the Court's ruling on summary judgment, all evidence, argument and jury issues concerning the cross pin "should have dropped out of the case entirely." (Doc. No. 136 at 16.) Specifically, Defendant complains of admission of the following: 1) Plaintiff wore a cross pin on the lapel of his police uniform "as a sign of his strong Christian beliefs;" 2) Chief Roberts "ordered Risk to stop wearing a cross on his police uniform and Risk protested to both the Borough Council President and Dan Johnson, the Council Police Department liason, but Roberts insisted; 3) On December 7, 2004, counsel corresponded with Chief Roberts, with copies to each member of Borough Council, requesting that Risk be permitted to wear his cross.

Plaintiff responds that although Plaintiff could premise no Constitutional claim on the restriction of his right to wear a cross pin, the evidence admitted at trial was highly relevant to his Title VII claims for two reasons: 1) the evidence was probative of Chief Robert's anti-religious animus, and highly relevant in light of the fact that Roberts was Plaintiff's direct

supervisor and an individual who likely influenced the decision to fire Plaintiff; and 2) the letter from Plaintiff's attorney complaining that the forced removal of the cross pin was religious discrimination amounted to protected activity for purposes of Plaintiff's retaliation claim.

The Court found this evidence to be highly relevant to Plaintiff's Title VII claims pursuant to Federal Rule of Evidence 401. Moreover, it was not barred by any other Federal Rule of Evidence. First, evidence that Roberts objected to the cross pin was not offered for its truth, but to show his state of mind, especially in light of the fact that no other individual working for the Defendant objected to Plaintiff's pin. Further, contrary to his trial testimony, Chief Roberts never told Risk or anyone else that his reason for objecting to the cross pin was based on Constitutional grounds. Consequently, this evidence was not hearsay, but offered to show Chief Roberts state of mind. Moreover, Roberts' objection to the cross pin is relevant to Plaintiff's retaliation claim because Plaintiff's complaints about Roberts' ordering him to remove the cross pin constituted protected activity in that Plaintiff had a good faith belief that the conduct he opposed violated Title VII. Clark County Sch. Dist. V. Breeden, 532 U.S. 268, 269-70 (2001). Consequently, the evidence was properly admitted and highly relevant to the issue of pretext, and Plaintiff's retaliation claim pursuant to Title VII.

3. Plaintiff's decertification

a. Plaintiff's testimony regarding his decertification

The Defendant argues that the Court erred in allowing Plaintiff's testimony regarding his police decertification. Plaintiff had moved in limine to exclude this evidence, and Defendant argued in opposition. (Doc. Nos. 60, 64.) Relying on Federal Rule of Evidence 608 (b), the

Court ruled that Plaintiff's decertification was admissible for purposes of impeaching his character for truthfulness only, and Risk's testimony concerning his decertification was limited to that effect.  (Tr. 3/18/08 at 14-30.)  No evidence was introduced regarding the specifics of the Pennsylvania Municipal Police Officers' Education and Training Commission's ("MPOETC") decision to revoke Plaintiff's certification.  Plaintiff testified at trial that he was decertified as a police officer.  (Tr. 3/25/08 at 140-41, 184-85.)  He testified to MPOETC's determination that his certification was issued in error, specifically about the confusion in the meanings of "full time" and "full time capacity" in Pennsylvania and Ohio.  (TR. 3/25/08 at 140-42.)  Risk's testimony did not dispute MPOETC's decision, but explained that he did not receive his certification as a result of an intentional lie.  (Tr. 3/25/08 at 140-42.)  Such testimony was properly admitted in light of the fact that Defendant attempted to impeach Risk's character for truthfulness by introducing evidence of his decertification.  See Fed. R. Evid. 608(b).

      b.  Preclusion

Similarly, Defendant argues that MPOETC's "decision was fully effective not only to revoke plaintiff's certification ab initio, but also to foreclose plaintiff under the doctrine of collateral estoppel or issue preclusion from contesting in this Court the Commission's decision and the findings of fact and legal conclusions that led to and were incorporated into that decision."  (Doc. No. 136 at 19.)

For the reasons discussed above, the doctrine of preclusion in inapplicable.  The Court did not admit any evidence concerning the details of MPOETC's decision to revoke Plaintiff's police certification.  At issue in this case were Plaintiff's claims of religious discrimination under

Title VII, not the facts and circumstances leading up to Plaintiff's certification, and the subsequent revocation of his certification. The Court admitted no evidence contesting MPOETC's decision.

4. Amy Prevost's conversation with Chief Roberts

Defendant contends that the Court should have excluded the testimony of Amy Prevost concerning a conversation she had with Chief Roberts. Specifically, Defendant contends that the comments made by Roberts were his "personal opinion" about what might happen in the future concerning the layoff of certain police officers, "not a statement of fact based on personal knowledge" because he was not the actual decision maker. (Doc. No 136 at 22.)

Discriminatory comments by non decision makers are admissible as circumstantial evidence of discrimination. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1214 (3d Cir. 1995). Moreover, evidence at trial demonstrated that Council member Johnson asked Roberts about the availability of certain officers; and therefore, at a minimum, Roberts participated in the decision to terminate Risk.

The statements made by Roberts were not hearsay as they were not offered to prove the truth of the matter asserted. See Fed. R. Evid. 801(c). Roberts told Prevost that Risk's church interfered with his job. (Tr. 3/24/08 at 50.) Prevost responded that that was not a good reason to let go of a good officer because they go to church. Prevost testified that in response, Roberts laughed. (Tr. 3/24/08 at 51.) Prevost also prepared a written statement that was sent by Risk's legal counsel to all Borough Council members wherein she described this conversation. (Tr. 3/24/08 at 52.) Prevost also testified about a comment made by another officer of the

Defendant, Lt. Murray, that she overheard him tell another officer about the need to carry Tylenol in case Risk started preaching about church and God. (Tr. 3/24/08 at 53.) She further testified that she told Roberts about the "Tylenol comment" and that in response, Roberts laughed. (Tr. 3/24/08 at 53.) These statements were not offered to show that in fact, Risk's church interfered with his job, or that officers needed to carry Tylenol with them in case Risk spoke of his religion, but were offered as circumstantial evidence of discrimination: that Roberts made the statement about laying off an officer because of his religious practices, that others on the force ridiculed Risk for his beliefs, and that all members of Borough Council were aware of Chief Roberts' opinion as to who should be let go in the upcoming layoffs. That is, they were offered as circumstantial proof of Roberts' state of mind, or discriminatory animus, and of the managerial viewpoint concerning officers who may have religious obligations that interfere with work. The Prevost written statement was accompanied by a letter from Plaintiff's counsel complaining of discrimination. Hence, it was offered to show Defendant was aware of Plaintiff's opposition to what he believed to be discriminatory conduct, and was relevant to show protected activity, an element of his retaliation claim. See Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 287-88 (3d Cir. 2001) (citation omitted).

Further, even if such statements were hearsay in that they were offered to prove the truth of the matter asserted, there were admissible under Federal Rule of Evidence 801(d)(2)(D). That is, they were made by an agent of the Defendant, Chief Roberts, concerning a matter within the scope of his employment or agency, and therefore admissible as a party admission. Evidence at trial demonstrated that Roberts was an agent of Defendant in that he was consulted by Borough Council on various matters affecting the police department.

5.   The testimony of Dan Johnson

Here, Defendant complains that Plaintiff subpoenaed witness Dan Johnson to testify on his behalf and then forced him to sit in the hallway for two days while Plaintiff presented his case in chief.  Defendant continues that Plaintiff rested, without calling Johnson.  (Doc. No. 136 at 23.)  At this point, Defendant released Mr. Johnson from the subpoena.  Johnson then left the courthouse.  Defendant notes that the Court permitted Plaintiff to read from Johnson's deposition in rebuttal, and that the Plaintiff offered no acceptable reason why Johnson was not called during Plaintiff's case in chief.  Defendant argues that even though it was offered an opportunity to introduce additional portions of Johnson's deposition testimony, "that option was unreal and unfair."  (Doc. No. 136 at 25.)  That is, Defendant contends that it lost its opportunity to effectively cross-examine Johnson.  Hence, Defendant argues that the Court should disregard Johnson's deposition testimony in its assessment of Defendant's Motion for Judgment as a Matter of Law.

Plaintiff responds that under the McDonnell-Douglas shifting paradigm, Defendant bears the burden of asserting a legitimate nondiscriminatory reason for firing Plaintiff.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Because this was a "reduction in force" case, the employer must show why it chose to discharge the Plaintiff, not just why it chose to discharge employees in general.  See Tomasso v. Boeing Co., 445 F.3d 702, 707 (3d Cir. 2006).  Plaintiff supports his argument with the following comment by the Court:  "Your reason that you gave was why you laid off, why you laid off anyone.  You never got beyond, at least at this point, why it was Risk and not Pompe or one of the other two that were kept.  I'm not even sure at this point that the burden does shift back."  (Tr. 3/25/08 at 197.)  Plaintiff continues that

he had no need to call Johnson to the stand to contradict a reason for Risk's discharge that had not yet been given. (Doc. No. 137 at 31.)

Plaintiff had the right on rebuttal pursuant to the <u>McDonnell-Douglas</u> paradigm to demonstrate that any reason given by Defendant was pretextual. The Court offered Defendant an opportunity to read other portions of the deposition transcript into the record, as admitted by Defendant in its Brief. (Doc. No. 136 at 25.) As to Defendant's contention that this "option was unreal and unfair" in that it lost its right to effectively cross-examine Johnson, the Court informed Defendant that Johnson could testify in person. (Tr. 3/26/08 at 141-42.) The Court also offered to re-open the case and allow Johnson to testify after both parties rested. (Tr. 3/27/08 at 16.) Defendant cannot now request that the Court disregard Johnson's testimony when Defendant failed to take advantage of the many opportunities offered by the Court to effectively cross examine this witness on the record.

Consequently, the Court will not strike this evidence from the record in considering Defendant's Motion for Judgment as a Matter of Law.

6. <u>The evidentiary adverse inference concerning the council meeting audiotapes</u>

Defendant argues that the Court improperly granted Plaintiff's request during the jury charge conference to give an adverse inference instruction with regard to Defendant's failure, in response to a discovery request, to provide tapes, in addition to meeting minutes, of the Borough Council meeting where it was discussed that Risk should be discharged. The adverse inference charge provided as follows:

> In presenting this case, the Defendant did not produce tapes of the borough
> council meetings which were requested by the plaintiff prior to trial. The general

rule is that where evidence is in the control of a party and that party failed to produce it, you may draw the inference that, if produced, it would be unfavorable to that party.

(Tr. 3/27/08 at 79.)

Evidence that the tapes existed was elicited from witness Pam Church, Borough Council member, when she testified that she believed that an audiotape from that meeting still existed three years later. (Tr. 3/26/08 at 193.) Defendant argues that Plaintiff's counsel did not request the tape again at that time, "or ask for a recess or time to listen to the tape." (Doc. No. 136 at 26.)

Plaintiff responds that Risk asked for "any and all Burgettstown meeting minutes, tapes, or transcripts from October [2004] to the present." (Doc. No. 137 at 37.) Defendant provided no tapes or indicated that tapes existed. Ms. Church verified that the discovery response was "true and correct," and then testified twice at trial that the tapes existed. (Tr. 3/24/08 at 83; Tr. 3/25/08 at 102.) The second time she so testified, she was asked whether she brought the tapes with her, and she indicated she had not. (Tr. 3/25/08 at 102.)

As thoroughly discussed by Plaintiff, the Court did consider the factors set forth in Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994), in considering whether to give the adverse instruction: the degree of fault of the party who altered or destroyed the evidence, the degree of prejudice suffered by the opposing party, and the availability of a lesser sanction that will avoid substantial unfairness to the opposing party's rights and deter future similar conduct. First, the Court considered the fact that counsel may not have known about the tapes, but that the client did as was indicated in the testimony of Pam Church, who verified the discovery response, and at a minimum, was negligent in not turning over the tapes. Further,

even if defense counsel was not aware of the tapes at the time the discovery response was verified, he was placed on notice of their existence with the testimony of Church. Yet, on the next trial day, counsel still had not produced the tapes, even though the Federal Rules of Civil Procedure make clear the continuing obligation to turn over relevant materials as they become known. See Fed. R. Civ. P. 26 (e) (1) (A) (production responses must be timely supplemented if party learns production incomplete). Second, with regard to the degree of prejudice suffered by Plaintiff, the Court indicated the failure to produce the tapes was in fact a " big issue" in light of the conflicting testimony of what was said and done, or not said and done at this meeting. (Tr. 3/26/08 at 195.) Finally, as to the availability of a lesser sanction, the Court was careful to frame the instruction as a permissive, rather than a mandatory inference; that is, the Court instructed the jury that "the general rule is that where evidence is in the control of a party, and that party fails to produce it, you may draw the inference that, if produced, it would be unfavorable to that party." (Tr. 3/27/08 at 79.) (emphasis added). The Defendant did not suggest an alternative sanction. Consequently, the Court will not disregard the evidentiary adverse inference concerning the council meeting audiotapes in its consideration of Defendant's Motion for Judgment as a Matter of Law.

7.  Plaintiff was not qualified

Defendant argues that one element of Plaintiff's burden of proof pursuant to the McDonnell-Douglas paradigm is that he was qualified for the position, and that because his police certification was revoked over two years after his discharge from Defendant, Plaintiff cannot establish this element of his prima facie case. Therefore, concludes Defendant, it is

entitled to judgment as a matter of law on this issue.

In Bowers v. NCAA, 475 F.3d 524, 536 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit held that after-acquired evidence cannot be used to contest a plaintiff's qualifications for purposes of establishing a prima facie case of discrimination.  In an Americans with Disabilities Act ("ADA") case,[2] the defendants argued that after-acquired evidence of plaintiff's drug abuse disqualified him from playing sports at any university at the time the decision was made to disqualify plaintiff.  Id. at 534.  Relying on McKennon v. Nashville Banner Pub. Co., 513 U.S. 352 (1995), the Third Circuit held that the defendants could not claim that the plaintiff was not qualified based upon the after-acquired evidence of his drug abuse.  Id.  On remand, the United States District Court for the District of New Jersey emphasized the impact of the Third Circuit's opinion in Bowers, and its effect on McNemar v. Disney Store, Inc., 91 F.3d 610, 621 (3d Cir. 1996), relied upon by Defendant:

> Although there is certainly authority from within and outside this Circuit to support Defendants' arguments concerning the applicability of the after-acquired evidence rule to the issue of whether Bowers was an otherwise qualified individual, the Court must grant Plaintiff's preclusion motion.  Irrespective of what result the law of this Circuit might have required the Court to reach prior to the Court of Appeals' decision in Bowers, see McNemar, 91 F.3d at 621, the import of the Court of Appeals' application of the after-acquired evidence rule to Bowers' drug use is unmistakable.  The Court of Appeals addressed the rule specifically in the context of an analysis of whether Bowers was an "otherwise qualified individual with a disability," . . . and did not adopt Defendants' argument that the after-acquired evidence rule is inapplicable to the otherwise-qualified inquiry.

Bowers, 563 F. Supp.2d at 530 (citing Bowers, 475 F.3d at 537) (citation omitted).

---

[2]The after-acquired evidence doctrine applies "with equal force" in the contexts of the ADA and Title VII.  See Bowers v. NCAA, 563 F. Supp.2d 508, 528 (D.N.J. 2008) (citing Bowers, 475 F.3d at 537).

Consequently, Defendant's argument that Plaintiff Risk could not establish his <u>prima facie</u> case pursuant to the <u>McDonnell-Douglas</u> paradigm because he was decertified as a police officer two years after his termination from Defendant must fail. Defendant is not entitled to judgment as a matter of law on this issue.

8.    <u>Plaintiff should have not been awarded backpay</u>

Defendant argues that like Plaintiff's claims for front pay and reinstatement, the Court should have denied Plaintiff's claim for back pay in its entirety, and therefore judgment as a matter of law in Defendant's favor is appropriate on this issue. Defendant supports its contention by reiterating its arguments made at Doc. No. 107 in its Response to Plaintiff's Motion for Back Pay, claiming that the circumstances at bar are so egregious as to constitute "extraordinary equitable circumstances" that should be considered by the district court in exercising its discretion to eliminate Plaintiff's claim for back pay. Defendant also relies on cases concerning the denial of back pay awards to illegal aliens as support for its argument.

Again, the Court finds the reasoning of <u>McKennon v. Nashville Banner Pub. Co.</u>, 513 U.S. 352 (1995), to be controlling here. In the case at bar, the jury found that a Title VII and PHRA violation had occurred. As noted by the <u>McKennon</u> Court, violations of this type:

> [M]ust be deterred and compensated without undue infringement upon the employer's rights and prerogatives. The object of compensation is to restore the employee to the position he or she would have been in absent the discrimination, . . . but that principle is difficult to apply with precision where there is after-acquired evidence of wrongdoing that would have led to termination on legitimate grounds had the employer known about it.

<u>McKennon</u>, 513 U.S. at 362 (internal citation omitted). In fashioning the award, the district court "can consider taking into further account extraordinary equitable circumstances that affect

the legitimate interest of either party."  Id. at 362.  Here, the Court did not find Risk's

decertification to constitute "extraordinary equitable circumstances" so as to warrant an absolute

bar to back pay, especially in light of the evidence presented that his certification was issued in

error.  See e.g., id. (after-acquired evidence cannot operate to bar all relief where employee stole

documents from employer); Mardell v. Harleysville Life Ins. Co., 65 F.3d 1072 (3d Cir. 1995

(back pay appropriate where after-acquired evidence demonstrated employee lied on resume).

As noted by the McKennon Court, "[a]n absolute rule barring any recovery of back pay,

however, would undermine [TitleVII's] objective of forcing employers to consider and examine

their motivations, and of penalizing them for employment decisions that spring from []

discrimination."  513 U.S. at 362.

        The Court finds Defendant's reliance on cases recognizing the inappropriateness of the

National Labor Relations Board ("NLRB") to provide back pay to illegal aliens to be inapposite.

See Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 902-03 (1984); Hoffman Plastic Compounds, Inc. v.

NLRB, 535 U.S. 137 (2002).  In Sure-Tan, the United States Supreme Court emphasized the

NLRB's obligation to take into account Congress' important objective of deterring unauthorized

immigration embodied in the Immigration and Nationality Act ("INA").  467 U.S. at 903.  No

such considerations are present in the Title VII discrimination case at bar.  Moreover, decided

after McKennon, Hoffman does not attempt to reconcile its holding with McKennon.  The Court

here finds that omission significant in its analysis of Hoffman, and its application to the case at

bar.

        Consequently, Defendant is not entitled to judgment as a matter of law regarding the

award of back pay to Plaintiff.

9.    Sufficiency of the evidence

Defendant argues that the evidence of record, with or without the contested evidentiary rulings, is legally insufficient to support the jury's verdict.  Defendant continues that without the alleged improperly admitted evidence, in conjunction with "several erroneous and prejudicial jury instructions," Plaintiff's "attacks would have failed as a legitimate basis for the jury to find pretext."  (Doc. No. 136 at 39, 43.)

Reviewing the record in a light most favorable to Plaintiff, the Court cannot find that it is "critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief."  Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 249 (3d Cir. 2001). Plaintiff adduced sufficient evidence at trial to support the jury's finding that he had made out the Title VII prima facie case, which requires that the plaintiff show the following: 1) he is a member of a protected class; 2) he was qualified for the position held; 3) he was discharged from that position; and 4) non-members of the protected class were treated more favorably. McDonnell Douglas Corp., 411 U.S. at 802.  First, Plaintiff, a Christian, was a member of a protected class.  As discussed at Part II. A. 7., supra, Plaintiff also was a certified police officer at the time he was discharged.  There was evidence presented at trial that Plaintiff was discharged; and that non-members of the protected class were treated more favorably than Plaintiff.  Therefore, there was sufficient evidence in the record upon which the jury could have reasonably concluded that Plaintiff succeeded on his initial burden of making out a Title VII prima facie case.

Under the McDonnell Douglas burden shifting analysis, if a Title VII plaintiff

20

succeeds in making out a <u>prima</u> <u>facie</u> case of discrimination, the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment action. <u>McDonnell Douglas</u>, 411 U.S. at 802. Once the employer has done so, the burden shifts back to the plaintiff to demonstrate that the proffered reasons are mere pretext for discrimination. <u>Id</u>. Although Defendant seemed to suggest that availability was the reason Plaintiff was selected for discharge, the Court finds there was sufficient evidence in the record to support a finding that the proffered reason was pretextual. Specifically, the Court notes that there was substantial evidence in the record of pretext including, but not limited to the following:

1). The identity of Defendant's decision maker as to who was responsible for terminating Plaintiff changed throughout the litigation;

2). Defendant's reasons for terminating Risk changed throughout the litigation;

3). Chief Roberts told Amy Prevost that Plaintiff would be chosen for termination because he had to go to church;

4). Andrew Miller, a borough councilman, called Prevost's statement regarding her conversation with Chief Roberts "garbage;"

5). Borough council did not consider the letter from Plaintiff's attorney complaining about religious discrimination;

6). Defendant did not schedule Plaintiff after he complained of discrimination; and

7). Lt. Murray's "Tylenol" comment and Chief Robert's laughing reaction to it.

Defendant does not contest the sufficiency of the evidence with regard to the jury's verdict on retaliation. <u>See</u> Doc. No. 136 at 36-43.

Accordingly, the Court must conclude that based on the evidence offered at trial, this

is not a situation in which a reasonable jury could only have decided in favor of Defendant.

Because the Court finds that Plaintiff offered sufficient evidence from which a jury could find in

his favor on his claim of discrimination, the Court will not disturb the jury's findings and will

allow the judgment to stand.  Defendant's Motion for Judgment as a Matter of Law is therefore

denied.

**B.**        **Motion for a New Trial pursuant to Federal Rule of Civil Procedure 59**

         EVIDENTIARY ISSUES

         In Bhaya v. Westinghouse Electric Corp., 922 F.2d 184 (3d Cir. 1990), the United

States Court of Appeals for the Third Circuit explained that in reviewing a district court's

decision to grant or deny a motion for a new trial, it must give substantial deference to the trial

judge's decision "'who saw and heard the witnesses and has the feel of the case which no

appellate printed transcript can impart.'" Bhaya, 922 F.2d at 187 (quoting Cone v. West Virginia

Pulp & Paper Co., 330 U.S.212 (1947)).  "Particular deference" is appropriate where the

decision for granting or denying a new trial was based on evidentiary rulings that are necessarily

entrusted to the trial court's discretion.  See id.  See also Link v. Mercedes-Benz of N. Am., Inc.,

788 F.2d 918, 921-22 (3d Cir. 1986) ("Where a contention for a new trial is based on the

admissibility of evidence, the trial court has great discretion.").

         1.    The Police Tenure Act

         As discussed in detail at Part II. A. 1., supra, the Court's judicial notice of the

Pennsylvania Police Tenure Act, is harmless error.  Although the Police Tenure Act, by its

terms, does not apply to the Defendant, the Pennsylvania Borough Code does.  It too, provides

for layoffs in order of reverse seniority.  <u>See</u> 53 P.S. § 46190.

Clearly, in light of the substantial evidence of pretext introduced at trial, any error

committed by the Court in admitting evidence concerning the Police Tenure Act is harmless in

that "it is highly probable that the error did not affect the outcome of the case."  <u>McQueeney</u>,

779 F.2d at 917.  Consequently, the Court's refusal to grant a new trial is not "inconsistent with

substantial justice."  <u>Bhaya</u>, 709 F. Supp. at 601.


2.   <u>The cross pin</u>

As discussed in Part II. A. 2. <u>supra</u>, the Court did not err in admitting evidence

concerning Plaintiff's cross pin.  Consequently, the Court must respect the jury's verdict and

Defendant's Motion for a New Trial based on the admission of this evidence must be denied.


3.   <u>Plaintiff's decertification</u>

Likewise, as discussed in Part II. A. 3. <u>supra</u>, the Court did not err in admitting

testimony concerning Plaintiff's decertification.  Hence, Defendant's Motion for a New Trial

based on this evidentiary issue must be denied.


4.   <u>Amy Prevost's conversation with Chief Roberts</u>

Similarly,  as discussed in Part II. A. 4. <u>supra</u>, the Court did not err in admitting

testimony concerning Amy Prevost's conversation with Chief Roberts.  Hence, Defendant's

Motion for a New Trial based on this evidentiary issue must be denied.

5.    The testimony of Dan Johnson

As discussed in Part II. A. 5. supra, the Court did not err in admitting the deposition testimony of Dan Johnson.  Hence, Defendant's Motion for a New Trial based on this evidentiary issue must be denied.


6.    The council meeting audiotapes

Finally, as discussed in Part II. A. 6. supra, the Court did not err in giving the adverse inference instruction.  Hence, Defendant's Motion for a New Trial based on this evidentiary issue must be denied.


JURY INSTRUCTIONS

In evaluating contentions of error with regard to jury instructions, the relevant inquiry is "whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury."  United States v. Tiller, 302 F.3d 98, 104 (3d Cir. 2002) (citing Ayoub v. Spencer, 550 F.2d 164, 167 (3d Cir. 1977)).  Instead of isolating particular language, the context of the entire charge is to be examined.  Id. (citing United States v. Turley, 891 F.2d 57, 62 (3d Cir. 1989)).  Consequently, the Court will view the following instructions that have been called into question by the Defendant in the context of the entire charge to determine whether any one or all of them warrant the grant of a new trial.


7.    The Court should not have instructed the jury that Plaintiff was qualified

First, the Defendant argues that the Court committed reversible error when it instructed the jury that it could determine whether Plaintiff was qualified as a police officer when Risk had been decertified two years after his termination. (Doc. No. 136 at 44.) See Tr. 3/27/08 at 83. The Court's careful review of the trial transcript reveals that the Court properly instructed the jury pursuant to the controlling law in this Circuit as discussed above. See supra Part II. A. 7. Specifically, the court instructed the jury as follows:

> More specifically, Mr. Risk must show that, number one, he is a member of a protected class; that is, that he is a Christian.
> Number two, at the time he was fired, he was qualified for the position he held.
> Number three, that he was discharged.
> And, number four, that the Defendant retained employees who were not viewed as needing religious accommodation.

(Tr. 3/27/08 at 83.) The above charge comports with the Third Circuit's holding in Bowers v. NCAA, 475 F.3d 524, 536 (3d Cir. 2007), that after-acquired evidence cannot be used to contest a plaintiff's qualifications for purposes of establishing a prima facie case of discrimination. The Court committed no error with regard to this instruction. Consequently, it cannot serve as a basis for granting Defendant's Motion for a New Trial.


8.  The Police Tenure Act and the cross pin instructions were prejudicially erroneous

Next, Defendant argues that the Court's instructions were "not fair, because they emphasized legal inferences that favored plaintiff, and foreclosed defendant from adequately arguing its case to the jury." (Doc. No. 136 at 45.)


a.  Instruction on Police Tenure Act

Defendant challenges the following instruction:

The rules of evidence do permit a judge to accept facts that cannot reasonably be disputed. This is called judicial notice. During the trial, you heard some testimony about the Pennsylvania Police Tenure Act. This Act sets forth the rules that apply to reduction of police officers for economic or other reasons. I have decided to take judicial notice of the fact that the Pennsylvania Police Tenure Act applies to the Borough of Burgettstown.

Under that Act, in the event that a borough, such as Burgettstown, has an economic or other reason to reduce its paid work force, it is required to discharge employees in the following order. First, if there are any employees eligible for retirement, those employees must retire.

Second, the last employees hired are the first to be fired. The borough must start with the last paid employee hired and work its way backward in numerical order until it reaches the necessary number of positions to be eliminated. If the borough later increases its work force, the former employees must be re-hired in order of seniority before the borough hires any new employees.

Now, it is not your duty to determine whether the Pennsylvania Police Tenure Act was, in fact, violated. And, in fact, a dismissed employee has the right to appeal violations of this Act at the state court level. This evidence may only be considered by you in determining whether the borough's reasons for terminating Mr. Risk were pretexts.

(Tr. 3/27/08 at 85-86.) Defendant contends that this instruction "sided squarely with plaintiff and foreclosed any effective argument regarding the inapplicability of the Act." (Doc. No. 136 at 45.) This part of the instruction, argues Defendant, was legally incorrect, and in effect, "was tantamount to directing a verdict for plaintiff." (Doc. No. 136 at 45.)

Plaintiff responds that the instruction on the Police Tenure Act "was offered solely to prove Defendant departed from its own policies." (Doc. No. 137 at 33). Further, Plaintiff emphasizes that the instruction did not require the jury to find pretext, but that "the evidence may only be considered by you in determining whether the Borough's reasons for terminating Mr. Risk were pretext[s]." (Doc. No. 137 at 33.)

First, as discussed at Part II. A. 1., _supra_, even though the Police Tenure Act was inapplicable to the case at bar, the Borough Code, with its comparable seniority furlough

provision, did.  In addition, as discussed at Part II, A. 9., <u>supra</u>, concerning the sufficiency of the

evidence, substantial evidence of pretext was presented at trial such that any error must be

considered harmless.  That is, in light of the substantial evidence of pretext, "it is highly

probable that the error did not affect the outcome of the case."  <u>McQueeney</u>, 779 F.2d at 917.

Consequently, "it is the [C]ourt's duty to respect a plausible jury verdict" and Defendant's

Motion for a New Trial must be denied on this ground.  <u>Montgomery County v. MicroVote</u>

<u>Corp.</u>, 152 F. Supp.2d at 795.


      b.  <u>Instruction on the cross pin</u>

Defendant argues that the Court's instruction concerning the cross pin "prevented

Defendant from effectively arguing that Chief Robert's [sic] telling plaintiff twice to remove the

cross pin was not evidence of religious discrimination against plaintiff by defendant."  (Doc. No.

136 at 45.)

The brief instruction concerning the cross pin provided as follows:

> The government employer, such as the Borough police department, may
> prohibit its police officers from wearing a religious symbol on the lapel of
> the police uniforms while performing their duties in the community.  Thus,
> whether or not as a general jewelry policy, a governmental employer does
> not infringe a police officer's constitutional right requiring that he remove a
> religious symbol from his uniform.  However, you may, if you wish,
> consider the fact that the chief of police asked Mr. Risk to remove his cross
> pin as evidence of discriminatory animus.

(Tr. 3/27/08 at 86-87.)

First, the above instruction sets forth a correct statement of the law regarding a police

department's right to prohibit its officers from wearing a religious symbol on their uniforms

while performing official duties in the community.  <u>City of San Diego v. Roe</u>, 543 U.S. 77, 80

(2004); <u>Daniels v. City of Arlington</u>, 246 F.3d 500, 502-03 (5th Cir. 2001). As noted in Part II. A. 2., <u>supra</u>, evidence of the same was highly relevant as it related to Plaintiff's Title VII claims. Moreover, the instruction carefully conveyed to the jury that it <u>may</u> consider the fact that the chief of police asked Plaintiff to remove his cross pin as evidence of discriminatory animus; the jury was not directed to do so. This instruction legitimized Chief Roberts' own testimony that he did not wear religious articles on his own uniform because of the United States Constitution and separation of church and state. (Doc. No. 137 at 35.) <u>See</u> Tr. 3/26/08 at 14.

In addition, as correctly noted in Plaintiff's Responsive Brief, when the cross pin was first referenced at trial, the Court instructed the jury "it's not a violation of the law, per se, for the defendant borough to instruct its employees as to what they can and cannot wear on their uniforms." (Tr. 3/24/08 at 78.) The clear language of the instruction and the Courts explanatory comment to the jury during testimony, protected the Defendant from prejudice and appropriately separated the permissible claims relating to Title VII from the impermissible First Amendment claims disposed of on summary judgment. <u>See</u> <u>supra</u> Part II. A. 2.


    9.    <u>Amy Prevost's statement and testimony</u>

Defendant reiterates its arguments at Part II. A. 4., <u>supra,</u> in support of its Motion for a New Trial pursuant to Federal Rule of Civil Procedure 59. Defendant is not challenging a particular instruction. The Court incorporates by reference its discussion therein regarding the admissibility of this evidence. In light of that analysis, the Court did not err in admitting this evidence; consequently, this contention will not support Defendant's Motion for a New Trial.

10.  <u>The instruction on workplace culture warrants a new trial</u>

Defendant argues that the following instruction was "legally mistaken" and "had no factual foundation:"

> In determining whether Defendant's reason for firing Mr. Risk is a pretext for religious discrimination, you may examine the reasons provided against a backdrop of Defendant's workplace culture.  Thus, among other things, you may consider evidence of the atmosphere at Defendant's workplace and evidence of statements concerning religion, or the need to miss work because of religion.

(Tr. 3/27/08 at 84-85.)

Defendant failed to place an objection to this instruction on the record.  <u>See</u> Fed. R. Civ. P. 51(c)(1) (objection must be stated on the record, stating distinctly matter objected to and grounds for objection).  Consequently, the Defendant may not now raise this instruction as error.  <u>See</u> Fed. R. Civ. P. 51 (d) (1) (A).  Defendant contends that the Court may review this instruction for error, although not properly preserved, pursuant to the "plain error standard."  <u>See</u> Fed. R. Civ. P. 51(d)(2).  Federal Rule of Civil Procedure 51(d) (2) provides that "[a] court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights."  Here, Defendant has not established how this instruction satisfies the plain error requirements.  Defendant states only that the instruction was "obviously wrong," yet, Defendant provides no case law in support of this assertion.  (Doc. No. 139 at 22.)  Defendant mistakenly argues case law pertaining to hostile work environment claims under Title VII,[3] clearly inapplicable to Plaintiff's claims here for disparate treatment and retaliation.  The United States Court of Appeals for the Third Circuit has stated that an alleged error will meet the

---

[3]Defendant cites to a discussion in <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21-22 (1993), involving a hostile work environment claim.

plain error standard only if it "is fundamental and highly prejudicial or if the instructions are such that the jury is without adequate guidance on a fundamental question and our failure to consider the error would result in a miscarriage of justice."  Fashauer v. New Jersey Transit Rail Operations, Inc., 57 F.3d 1269, 1289 (3d Cir. 1995).  Reversal for plain error "should only be invoked with extreme caution in the civil context," and is only appropriate "where the error is so serious and flagrant that it goes to the very integrity of the trial."  Id. (citing United States v. Carson, 52 F.3d 1173, 1188 (2d Cir. 1995)).

In light of this standard, the Court cannot find that the jury instruction on workplace culture was plainly erroneous.  The instruction given provided adequate guidance to the jury on a relevant inquiry in a Title VII claim; that is, whether workplace culture provided evidence of discrimination.  See Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 132 (3d Cir. 1997); Abrams v. Lightolier, Inc., 50 F.3d 1204, 1214 (3d Cir. 1995).  Consequently, the instruction was not error, and most certainly, did not go "to the very integrity of the trial" pursuant to the plain error standard.  See Fashauer, 57 F.3d at 1289.  Accordingly, the Court cannot grant a new trial on the ground that the jury instruction on workplace culture was flawed.

11.     Allowing the belated introduction of the Dan Johnson deposition and the
         audiotape adverse inference charge also warrant a new trial

         a.  Belated introduction of the Dan Johnson deposition

Defendant's argument here does not relate to a particular jury instruction, but simply

reiterates the arguments noted in Part II. A. 5., supra. The Court incorporates its reasoning

therein and finds that the introduction of the Dan Johnson deposition testimony does not

constitute a prejudicial error of law. Hence, it will not support Defendant's Motion for a New

Trial.

b. Audiotape adverse inference charge

Defendant argues that the adverse inference instruction discussed at Part II. A. 6., supra,

requires a new trial. Here, the Court did not err in giving the adverse inference instruction. The

United States Court of Appeals for the Third Circuit has indicated that "[t]he unexplained failure

or refusal of a party to judicial proceedings to produce evidence that would tend to throw light

on the issues authorizes under certain circumstances, an inference or presumption unfavorable to

such party." Gumbs v. International Harvester, Inc., 718 F.2d 88, 96 (3d Cir. 1983). In order to

warrant an adverse inference, the evidence must be within the party's possession or control. Id.

Further, there must be an actual withholding of the evidence as opposed to an inadvertent loss or

accidental destruction of the relevant evidence. Id.

As discussed at Part II. A. 6, supra, there was no explanation offered as to why the tapes

of the Borough Council meeting discussing Risk's discharge were not produced. Pam Church,

Borough Council member, testified that she believed that an audiotape from that meeting still

existed. (Tr. 3/26/08 at 193.) No suggestion was offered that the tape had been inadvertently

destroyed or lost. Because these tapes were highly relevant to the issues in the case, were clearly

requested in discovery and not produced, and no attempt was made to bring them to the trial the

day after Pam Church testified that she believed   tape(s) existed, the Court did not err in giving

the adverse inference instruction. Consequently, Defendant's Motion for a New Trial cannot be

granted on this ground.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the Court must deny Defendant's Motion for Judgment as a

Matter of Law, or in the alternative, for a New Trial at Doc. No. 121.

**<u>ORDER</u>**

**AND NOW,** this 14th day of November, 2008, it is hereby **ORDERED** that

Defendant's Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b), or for a

New Trial pursuant to Fed. R. Civ. P. 59 (Doc. No. 121) is **DENIED**.

LISA PUPO LENIHAN
United States Magistrate Judge

cc: All counsel of record

   Via Electronic Filing